Ricky PATTON and Novella
Marie Patton

v.

The ESTATE OF Cornell Proctor UP-
CHURCH, Deceased; Tennessee
Farmers Mutual Insurance Company,
and Caroline Albritton.

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

May 16, 2007 Session.

July 27, 2007.

Permission to Appeal Denied by
Supreme Court Jan. 14, 2008.

John M. Wolfe, Jr., Chattanooga, Tennessee, for appellants.

Daniel H. Rader, III., Cookeville, Tennessee, for appellee, The Estate of Cornell Proctor Upchurch, Deceased.

Michael R. Campbell, Chattanooga, Tennessee, for appellee, Tennessee Farmers Mutual Insurance Company.

**OPINION**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and SHARON G. LEE, J., joined.

The Trial Court dismissed plaintiffs' Breach of Contract claim against defendants on the basis of collateral estoppel. Plaintiffs have appealed. We hold that the doctrine of collateral estoppel does not apply, but affirm the Trial Court's Judgment on the grounds that the doctrine of res judicata bars the action against the insured, the insurance attorney could not be held personally liable as he was an agent of a disclosed principal, and the insurance

company could not be held vicariously liable for its attorney's conduct, since the action against the attorney was extinguished by operation of law.

## Procedural History

On May 27, 1994, Ricky Patton and Caroline Albritton were involved in an automobile accident. Ricky and Marie Patton filed suit in the Circuit Court for Cumberland County against Ms. Albritton (the "First Civil Action"). Attorney John Wolfe represented the Pattons, and Ms. Albritton's insurer, Tennessee Farmers Mutual Insurance Company ("TN Farmers"), retained attorney Proctor Upchurch to represent Ms. Albritton. The case was set to be tried on May 10, 2001.

On May 7, 2001, Mr. Upchurch sent Mr. Wolfe an offer of judgment in the amount of $500,000.00. When Mr. Upchurch made this offer, he failed to remember that the total insurance coverage available to Ms. Albritton was $250,000.00. Upon realizing his error, Mr. Upchurch filed a withdrawal of his offer of judgment on May 11 and served Mr. Wolfe with a copy of the withdrawal.

On May 15, 2001, the Pattons filed a Motion to Enforce Settlement. The Motion argued the Pattons and Ms. Albritton had formed an oral contract of settlement, but that Ms. Albritton's attorney subsequently refused to abide by it.

The Motion further argued that an agreement to settle is a binding contract and asked the Court to enforce the settlement agreement between the plaintiffs and the defendant and award damages in the sum of $508,000.00, and attorneys' fees.

In April 2003, an evidentiary hearing was held before Judge John Maddux regarding the Pattons' Motion, at which time the Pattons' attorney raised a new argument, i.e., the defendant had made an offer of judgment pursuant to Tenn. R. Civ. P. 68 and that the defendant's purported withdrawal of that offer was invalid. Ms. Albritton's attorney argued that the Court had no authority to enter a consent judgment if the offer of judgment was withdrawn before it was accepted.

On April 23, the Circuit Court announced its finding of facts to the attorneys via a conference call. The Court noted that the parties asked it to address several issues including, "was the offer of settlement withdrawn before it was properly accepted." The Court concluded the offer was withdrawn before it was properly accepted.

Following this ruling, Ms. Albritton's attorney requested another judicial settlement conference, and a judicial settlement conference with Judge John Turnbull was set for July 3, 2003.

On July 1, 2003, the Pattons filed a Complaint against Mr. Upchurch, Tennessee Farmers Mutual, and Ms. Albritton in the Circuit Court of Cumberland County (the "Second Civil Action"). The Complaint asserted a breach of contract claim and averred that the parties reached an agreement in the First Civil Action, which Mr. Upchurch breached. The Complaint further alleged that Tennessee Farmers Mutual and Ms. Albritton were vicariously liable for Mr. Upchurch's conduct.

Mr. Upchurch answered, asserting that the Complaint failed to state a cause of action for which relief could be granted, and the Answer also denied that any contract ever existed among the Parties. Further, that the allegations in the Complaint were barred by the doctrines of res judicata or collateral estoppel. Tennessee Farmers Mutual answered, asserting arguments similar to those in the Upchurch Answer.

In April 2004, Mr. Upchurch died, and his Estate was substituted as a party.

In May 2004, the Pattons and Ms. Albritton executed a "Covenant not to Levy Execution on Judgment in Pending Actions." The Covenant noted that the First Civil Action and the Second Civil Action were still pending and stated,

Notwithstanding any judgment that may be rendered in either case, it is the express intent of the parties that Albritton, her representatives and assigns, shall never at any time be liable to Pattons beyond the consideration expressed herein, by reason of any damages or injuries on which such judgments may be based.

. . . .

In consideration of payment to Pattons of . . . ($250,000.00) by Albritton's automobile liability insurance carrier, the sum of . . . ($1,000.00) from Albritton, the sum of . . . ($6,000.00) to be paid by Albritton's liability insurance carrier to Pattons' attorney for the reimbursement of discretionary costs, receipt of which is acknowledged, and the further agreement that Albritton's liability insurance carrier will pay the Clerk of Court's costs in action number CV002937 [the First Civil Action], Pattons shall not at any time, nor shall anyone for them or in their behalf, enforce against Albritton, by execution or otherwise, any judgment that may be rendered in the above designated actions.

. . . .

Pattons expressly reserve all rights of action, claims, and demands against all other firms and persons other than Albritton.

On September 3, 2004, the Circuit Court entered a Judgment in the First Civil Action, and noted the Pattons' Covenant not to Levy Execution on any Judgment against Ms. Albritton:

[T]he parties announced in open court that all issues and controversies had been settled, and that a hearing on damages and the amount of subrogation interest would not be necessary. The Court was advised that the defendant had agreed to allow judgment to be entered against her in the amount of . . . ($251,000), which was accepted by the plaintiffs. . . .

The Circuit Court also noted the Pattons' intention to appeal the Court's denial of their previous Motion to Enforce Settlement: "The Court was further advised that plaintiffs reserve the right to appeal the Court's previous denial of Plaintiffs' Motion to Enforce Settlement, holding that the T.R.C.P. Rule 68 Offer of Judgment was withdrawn before it was properly accepted. . . ."

In the Second Civil Action, on September 7, 2004, Tennessee Farmers Mutual filed a Motion for Judgment on the Pleadings pursuant to Tenn. R. Civ. P. 12.03 or an order dismissing the Pattons' action pursuant to Tenn. R. Civ. P. 12.02(6).

In May 2005, this Court dismissed the Pattons' appeal regarding their Motion to Enforce Settlement in the First Civil Action, and also denied their subsequent motion to reinstate their appeal.

The Upchurch Estate then filed a Rule 12.02(6) motion requesting the Circuit Court to dismiss the Second Civil Action because, among other things, the doctrine of res judicata, collateral estoppel, and issue preclusion barred the Pattons' claim. The Estate attached to the Motion copies of the Circuit Court's Judgment in the First Civil Action and this Court's dismissal of the Pattons' appeal from that judgment.

Likewise, in February 2006, Tennessee Farmers Mutual filed a Motion for Summary Judgement, and attached to the Motion copies of the Circuit Court's Judgment in the First Civil Action and the Court's dismissal of the Pattons' appeal from that judgment. Tennessee Farmers Mutual relied on the doctrines of res judicata and collateral estoppel.

In response to Tennessee Farmers Mutual's Motion for Judgment on the Pleadings and to Dismiss and the Upchurch Estate's Motion, the Circuit Court filed an Opinion on April 13, 2006. He found that the Second Civil Action turned upon the same factual issue decided by the Court in the First Civil Action during Judge Maddux's motion hearing. The Court concluded that the doctrine of issue preclusion barred the Second Civil Action and dismissed the Complaint "as to all defendants".

## The Issues on Appeal

A. Whether the doctrine of collateral estoppel bars the contract issue?

B. Whether the doctrine of res judicata bars the Pattons' claim against Ms. Albritton?

C. Whether principles of agency law bar the Pattons' claim against the Upchurch Estate?

D. Whether principles of agency law bar the Pattons' claim against Tennessee Farmers Mutual?

E. Whether the Pattons' appeal was frivolous?

## Discussion of the Issues

The Parties' appellate arguments assume that the correct standard of review is that associated with Tennessee Rules of Civil Procedure 12.02(6) and 12.03.[1] This is not the correct standard of review in this case. *See, Young v. Barrow,* 130 S.W.3d 59–63 (Tenn.Ct.App.2003). If matters outside the pleadings are presented in conjunction with either a Rule 12.02(6) motion or a Rule 12.03 motion and the trial court does not exclude those matters, the court must treat such motions as motions for summary judgment and dispose of them as provided in Rule 56. Tennessee case law on this issue views the matters outside the pleadings as "extraneous evidence." *Pac. Eastern Corp.,* 902 S.W.2d at 952; *D.T. McCall & Sons v. Seagraves,* 796 S.W.2d 457, 459 (Tenn.Ct.App.1990). Most Federal courts[2] " 'view matters outside the pleading[s]' as including any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings.' " *BJC Health Sys. v. Columbia Cas. Co.,* 348 F.3d 685, 687 (8th Cir.2003). Mat-

1. The standard of review associated with Rules 12.02(6) and 12.03 is the same. *Young v. Barrow,* 130 S.W.3d 59, 63 (Tenn.Ct.App. 2003). Under this standard, the reviewing court construes the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true and giving the plaintiff the benefit of all reasonable inferences that can be drawn from those allegations. *Young v. Barrow,* 130 S.W.3d at 63; *Utley v. Tenn. Dep't of Corr.,* 118 S.W.3d 705, 712 (Tenn.Ct.App.2003). Courts should grant a motion to dismiss pursuant to Rules 12.02(6) or 12.03 only when the plaintiff is unable to prove any facts capable of supporting the claim that would entitle the plaintiff to relief. *Young v. Barrow,* 130 S.W.3d at 63; *Willis v. Tenn. Dep't of Corr.,* 113 S.W.3d 706, 710 (Tenn.2003).

2. Rules 12.02 and 12.03 of the Tennessee Rules of Civil Procedure are patterned on Rules 12(b) and 12(c) of the Federal Rules of Civil Procedure. Therefore, federal decisions provide helpful guidance in interpreting Tennessee's procedural rules. *Pac. Eastern Corp.,* 902 S.W.2d at 952 n. 7.

ters outside the pleadings may include affidavits,[3] judgments and transcripts from a prior cause of action,[4] and correspondence between the parties.

The Upchurch Estate attached to its motion a copy of the Circuit Court's final judgment in the First Civil Action, a transcript of the motion hearing regarding the Pattons' Motion to Enforce Settlement in the First Civil Action, and a copy of the Covenant not to Levy Execution. The Pattons' filed exhibits such as the motion hearing transcript from the First Civil Action, correspondence between the attorneys representing the Pattons and Ms. Albritton, and an affidavit of Ms. Albritton. The Tennessee Farmers Mutual Motion relied upon attorney correspondence and court orders from the First Civil Action. Thus, the Plaintiffs and two of the Defendants presented extraneous evidence, and the Circuit accepted the extraneous evidence which converted the Rule 12 motion into one for summary judgment.

Our "standard of review of a summary judgment determination is *de novo* without any presumption of correctness accorded the trial court's judgment." *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn.2002). If both the facts and conclusions to be drawn therefrom permit a reasonable person to reach only one conclusion, then summary judgment is appropriate. *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 91 (Tenn. 1999).

The Pattons' Second Civil Action Complaint alleged that the attorneys for Ms. Albritton and the Pattons reached a binding contract of settlement, but Ms. Albritton's attorney subsequently breached that contract; therefore, the Complaint assert-

ed a breach of contract claim. The defendants argue that the Circuit Court's decision in the First Civil Action decided the contract issue, and therefore, the doctrine of collateral estoppel bars further litigation of this issue.

■■■■ "[A]s our courts have construed the collateral estoppel doctrine, it bars the same parties or their privies from relitigating in a second suit issues that were actually raised and determined in an earlier suit." *Beaty v. McGraw*, 15 S.W.3d 819, 824 (Tenn.Ct.App.1998). The party relying upon the doctrine of collateral estoppel has the burden of proving the following elements:

[1.] that the issue sought to be precluded is identical to the issue decided in the earlier suit; [2.] that the issue sought to be precluded was actually litigated and decided on its merits in the earlier suit; [3.] that the judgment in the earlier suit has become final; [4.] that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier suit; and [5.] that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier suit to litigate the issue now sought to be precluded.

*Id.* at 824–25.

■■■■ The issue sought to be precluded must be identical, not merely similar, to the issue decided in the earlier suit. "[T]he court must first ascertain what issue or issues were actually decided in the first proceeding.... The court must then determine what issue or issues are involved in the second proceeding and must compare the issues in the two proceedings

**3.** *Pac. Eastern Corp.*, 902 S.W.2d at 952; *D.T. McCall & Sons*, 796 S.W.2d at 459–60.

**4.** *Teachers Ins. & Annuity Ass'n v. Harris*, 709 S.W.2d 592, 594 (Tenn.Ct.App.1985) (judgments); *Ryan v. Scoggin*, 245 F.2d 54, 57 (10th Cir.1957) (transcripts).

to determine whether they are identical." *Id.* at 826–27.

■ In the First Civil Action, the Pattons filed a Motion to Enforce Settlement, alleging "[t]he defendant and the plaintiffs orally agreed to settle this suit [the First Civil Action] on May 9, 2001, with the defendant agreeing to pay $508,000.00 and the plaintiffs agreeing to dismiss the suit." The Motion further alleged that "the defendant breached [her] contract to settle."

The Circuit Court subsequently held a hearing regarding the Motion to Enforce Settlement, and at this hearing, the Pattons' attorney, Wolfe, presented a second theory of relief, i.e., enforcing the purported agreement pursuant to Tenn. R. Civ. P. 68. The attorneys then discussed whether the Circuit Court should limit the hearing to the Rule 68 theory and reserve the breach of contract theory for another time:

[The Circuit Court]: Now, what is the issue that you want the Court to decide in this hearing today?

[The Pattons' attorney]: Well, your Honor, there really are two issues we have got.

[The Circuit Court]: All right.

[The Pattons' attorney]: I talked to opposing counsel and I think we may narrow it down to one for today, but we will talk about that.

[The Circuit Court]: Well, let's talk about it before we go further. Tell me what the issues are.

[The Pattons' attorney]: Well, the first issue is the Rule 68 issue.... On May 8 ... [Mr. Upchurch, Ms Albritton's former attorney,] made a Rule 68 offer for $500,000. And that offer was subsequently withdrawn on May 11. However, the case authority that we cite, I think clearly shows that there is very strong precedent to the proposition that once you make a Rule 68 offer, it has got

to stay open for ten days.... And at this point we would like to go ahead and get an enforcement of Rule 68.

[The Circuit Court]: So the issue is whether or not the Rule 68 offer that was made could be withdrawn?

[The Pattons' attorney]: Yes, sir. At this time. Also there is something that we have—

[The Circuit Court]: Wait just a minute. Is that the issue, Mr. Ramsey [Ms. Albritton's attorney]?

[Ms. Albritton's attorney]: Well, that is part of the issue.

[The Circuit Court]: All right, what are the issues that you want the Court to decide?

[Ms. Albritton's attorney]: It is essentially whether the Court can enter a consent decree or an agreed judgement because of the Rule 68 offer.... Now, Mr. Wolfe [the Pattons' attorney] and I have talked this morning, Judge, and with your permission we think—well, I think we agree—that if this settlement is not enforced pursuant to Rule 68, then Mr. Wolfe intends to pursue a common law breach of contract theory. And I would argue, would prepare to argue to the Court that that is a separate issue. Different witnesses and different legal issues.... I think Mr. Wolfe and I are prepared today to talk about whether this element can be enforced under Rule 68. But that common law breach of contract would require more work, more preparation, more briefing, more research, and would really be up to the Court to decide whether that should be a separate action filed because Mr. Wolfe mentions suing Mr. Upchurch [Ms. Albritton's former attorney] and Mr. Upchurch is not a party to this litigation we are here about today. So we would want the Court's guidance on that.

....

[The Pattons' attorney]: Your Honor, that does make a good deal of sense, and I am in agreement.

This exchange established that the attorneys agreed to litigate the Rule 68 issue, but not the breach of contract issue.

Our conclusion is further buttressed by the opening arguments Albritton's attorney first stated that "what counsel has agreed to decide today is whether this settlement is binding under Rule 68." Ms. Albritton's attorney then presented three arguments: Rule 68 did not apply since it was not timely made; the Pattons' attorney never served a written notice of acceptance; and the Circuit Court could not enter a consent judgment when one party withdraws consent and communicates that fact to the Court. The Pattons' attorney presented a two-step argument: once an offer of judgment is served pursuant to Rule 68, it cannot be withdrawn for ten days and the Pattons' Motion to Enforce Settlement constituted a written notice of acceptance. The record establishes that the Contract of Settlement issue was not litigated in the first civil action and the doctrine of collateral estoppel does not bar further litigation on this issue.

The defendants argue that the Circuit Court did resolve the contract issue and cite the following excerpt from the Circuit Court's finding:

The Court is of the opinion that formal offers of judgment are governed by Rule 68 and the Court is of the opinion that Rule 68 was not complied with, and therefore the plaintiff[s] cannot rely on Rule 68 to enforce the judgment.

*Now, **the next issue** is whether the offer of settlement was withdrawn before it was properly accepted. Yes, it was.* The offer was outstanding and the plaintiffs had not accepted the offer when the defendants came back and withdrew the offer, and therefore the Court is of the opinion that is was withdrawn before ... [it was accepted]. ... The offer was valid but it was not accepted, and therefore it is not binding.

Defendants argue that "the next issue" refers to the contract issue originally raised in the Pattons' Motion to Enforce Settlement.

This argument is not persuasive. Near the beginning of his findings of fact, Judge Maddux stated "when I heard the arguments of the attorneys at the hearing, it seemed to me like the plaintiffs were relying on Rule 68." When Judge Maddux wrote the final judgment in the First Civil Action, he described the scope of his prior findings as "the Court's previous denial of Plaintiffs' Motion to Enforce Settlement, holding that the T.R.C.P. Rule 68 Offer of Judgment was withdrawn before it was properly accepted." In his findings of facts, he neither discussed principles of contract law nor the Motion's original allegation—that the Parties' attorneys established a binding, oral contract of settlement, but concluded that Albritton's Offer of Judgment was never properly accepted under Rule 68. Since the issue of whether a binding contract of settlement was established is not identical to the ruling by the Trial Court, the doctrine of collateral estoppel would not prevent litigating the contract issue in a second civil action.

▪ We next consider whether the doctrine of res judicata bars the Pattons' claim against Ms. Albritton. "Res judicata and collateral estoppel are related preclusion doctrines with common purposes. They promote finality in litigation in order to conserve judicial resources and to relieve litigants from the cost and vexation of multiple lawsuits." *State ex rel. Cihlar v. Crawford,* 39 S.W.3d 172, 178 (Tenn.Ct. App.2000). Collateral estoppel merely

bars relitigation of specific issues, but res judicata has a broader scope—it bars relitigation of entire claims. *Id.* at 178–79. Res judicata "bars a second suit between the same parties or their privies on the same cause of action with respect to all the issues which were or *could have been litigated* in the former suit." *Young v. Barrow,* 130 S.W.3d 59, 64 (Tenn.Ct.App.2003).

Parties asserting a res judicata defense must demonstrate (1) that a court of competent jurisdiction rendered the prior judgment, (2) that the prior judgment was final and on the merits, (3) that both proceedings involved the same parties or their privies, and (4) that both proceedings involved the same cause of action.

*Id.*

■■■■ In the First Civil Action, the Trial Court had jurisdiction over the Pattons' current breach of contract claim. Their claim involved a purported contract of settlement concerning the cause of action in the First Civil Action. The trial courts of this state have inherent authority over settlement agreements concerning pending actions. *See Mullins v. Parkey,* 874 S.W.2d 12 (Tenn.Ct.App.1992); *see also Garionis v. Pride,* No. W2001–01682–COA–R3–CV, 2002 WL 1760303, at *2 (Tenn.Ct.App. Apr.4, 2002); *Beaman Pontiac Co. v. Gill,* No. M1999–00666–COA–R3–CV, 2000 WL 502822, at *3 (Tenn.Ct. App. Apr.28, 2000).

■■■■ The Trial Court's judgment in the First Civil Action was final and on the merits, and was based upon a "Covenant not to Levy Execution on Judgment in Pending Actions"[5] executed by the Pattons.

"[A] consent judgment operates as *res adjudicata* to the same extent as a judgment on the merits." Much like a judgment on the merits, an agreed judgment of dismissal in settlement of a controversy "is conclusive, not only on the matters actually raised and litigated, but it is also conclusive on every other matter that could have been litigated and decided as an incident to or essentially connected with the subject matter of the prior litigation."

*Gerber v. Holcomb,* 219 S.W.3d 914, 917–18 (Tenn.Ct.App.2006).

■■■■ The Pattons and Ms. Albritton were both parties in the First Civil Action, and the First and Second Civil Actions involve the same cause of action. " "The principal test for determining whether the causes of action are the same is whether the primary right and duty or wrong are the same in each case.'" *Gerber v. Holcomb,* 219 S.W.3d 914, 917–18 (Tenn.Ct. App.2006). In the First Civil Action, the

---

5. The Covenant stated,

Notwithstanding any judgment that may be rendered in either case, it is the express intent of the parties that Albritton, her representatives and assigns, shall never at any time be liable to Pattons beyond the consideration expressed herein, by reason of any damages or injuries on which such judgments may be based.

. . . .

In consideration of payment to Pattons of . . . ($250,000.00) by Albritton's automobile liability insurance carrier, the sum of . . . ($1,000.00) from Albritton, the sum of . . . ($6,000.00) to be paid by Albritton's liability insurance carrier to Pattons' attorney for the reimbursement of discretionary costs, receipt of which is acknowledged, and the further agreement that Albritton's liability insurance carrier will pay the Clerk of Court's costs in action number CV002937 [the First Civil Action], Pattons shall not at any time, nor shall anyone for them or in their behalf, enforce against Albritton, by execution or otherwise, any judgment that may be rendered in the above designated actions.

. . . .

Pattons expressly reserve all rights of action, claims, and demands against all other firms and persons other than Albritton.

Pattons sought to receive compensation for injuries sustained in an automobile accident. In the Second Civil Action, the Pattons seek to enforce a purported contract of settlement the purpose of which was to compensate the Pattons for their injuries in the same automobile accident. Thus, both actions sought to compensate the same underlying wrong, i.e., injuries from an automobile accident. The Pattons raised their breach of contract theory in the First Civil Action, but failed to litigate the issue in that suit. Instead, they reserved their theory as the basis of the Second Civil Action. "A plaintiff may not, by disclaiming or failing to present a particular fact or theory, preserve such fact or theory to be used as a ground for a second suit." *Barnett v. Milan Seating Systems,* 215 S.W.3d 828, 835 (Tenn.2007). Based on the foregoing, we conclude the doctrine of res judicata bars the Pattons' breach of contract action against Ms. Albritton.

 Nevertheless, the Pattons argue that Ms. Albritton did not file a motion to dismiss; therefore, the Circuit Court did not have authority to dismiss their claim against her. However, Tennessee trial courts have the authority to dismiss a complaint *sua sponte* if such complaint fails to state a claim upon which relief may be granted, although such practice is not encouraged. *Huckeby v. Spangler,* 521 S.W.2d 568, 571 (Tenn.1975). Trial courts also have the authority to grant summary judgment *sua sponte,* but "only in rare cases and with meticulous care" when "the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law." *Thomas v. Transport Ins. Co.,* 532 S.W.2d 263, 266 (Tenn.1976).

The Pattons had a full and fair opportunity to meet the proposition that Ms. Albritton is entitled to a judgment as a matter of law. Her co-defendants both argued that the doctrine of res judicata barred the Pattons' breach of contract claim, and the Pattons' "Summary of Plaintiff's Argument in Opposition to Defendant's Motion to Dismiss" addressed the res judicata issue. The Pattons cannot be heard to argue that they were surprised by the res judicata theory. Moreover, the Pattons cannot argue that they did not anticipate the possibility of an adverse grant of summary judgment. We affirm the Trial Court's dismissal of the Pattons' breach of contract claim against Ms. Albritton.

 The Upchurch Estate's Rule 12.02(6) Motion asserted that principles of agency law bar the Pattons' breach of contract claim against Mr. Upchurch. The Pattons' Second Civil Action Complaint asserted that Upchurch acted as Ms. Albritton's attorney and agent during the negotiations leading to the purported contract of settlement. "[W]here an agent discloses his principal and contracts so as to bind the principal, the contract will ordinarily be regarded as that of the principal alone." *Brown v. Mays,* 34 Tenn.App. 632, 241 S.W.2d 871, 873 (Tenn.Ct.App.1949); *accord Holt v. Am. Progressive Life Ins. Co.,* 731 S.W.2d 923, 925 (Tenn.Ct.App.1987); *see also Creative Restaurants, Inc. v. City of Memphis,* 795 S.W.2d 672, 679 (Tenn.Ct. App.1990) ("Under our case law, an attorney is his client's agent."). Assuming, arguendo, that Mr. Upchurch did execute a contract of settlement so as to bind Ms. Albritton, Mr. Upchurch could not be held personally liable for breach of that contract. Thus, the Circuit Court reached the correct result when it dismissed the Pattons' breach of contract claim against the Upchurch Estate.

The final issue is whether agency law bars the Pattons' claim against Tennessee Farmers Mutual.

 "Tennessee is not a 'direct action' state where a plaintiff can sue the liability insurance carrier of the defendant who allegedly caused the harm." *Seymour v. Sierra*, 98 S.W.3d 164, 165 (Tenn.Ct.App. 2002); *accord Banks v. City of Mason*, 541 S.W.2d 143, 146 (Tenn.1976). The Pattons cannot assert a direct cause of action against Tennessee Farmers Mutual based upon its relationship with Ms. Albritton as her insurer. The Pattons' Complaint asserts that Tennessee Farmers Mutual is vicariously liable for Mr. Upchurch's conduct with regard to the purported contract of settlement. Our Tennessee Supreme Court has held that under agency theory "an insurer can be held vicariously liable for the acts or omissions of an attorney hired to represent an insured when those acts or omissions were directed, commanded, or knowingly authorized by the insurer." *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 395 (Tenn. 2002). However, a principal cannot be held vicariously liable for the acts of its agent "when the right of action against the agent is extinguished by operation of law." *Johnson v. LeBonheur Children's Medical Center*, 74 S.W.3d 338, 345 (Tenn.2002); *Raines v. Mercer*, 165 Tenn. 415, 55 S.W.2d 263, 264 (Tenn.1932). As we have held, the Pattons' right of action against Mr. Upchurch (i.e., Tennessee Farmers Mutual's alleged agent) is extinguished by operation of law because Upchurch was acting as the agent of a disclosed principal.[6] Accordingly, principles of agency law bar the Pattons's breach of contract claim against Tennessee Farmers Mutual.

Tennessee Farmers Mutual filed a motion asserting that this appeal was frivo-lous. The appellants Ricky and Marie Patton, presented debatable legal disputes; therefore, an award of damages for filing a frivolous appeal is not warranted in this case.

## Conclusion

The Circuit Court dismissed the Pattons' breach of contract claim against the Upchurch Estate, Ms. Albritton, and Tennessee Farmers Mutual on the basis of collateral estoppel. As we have discussed, the doctrine of collateral estoppel does not apply to this case. Although the Circuit Court's reasoning was incorrect, as we found, it reached the correct result, as the Pattons' breach of contract claims against all three defendants were dismissed. We may affirm a judgment that was correct in result, although based on erroneous reasoning. *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn.1986).

We affirm the Judgment of the Circuit Court and remand, with the cost of the appeal assessed to Ricky and Marie Patton.

---

6. *Brown v. Mays*, 34 Tenn.App. 632, 241 S.W.2d 871, 873 (Tenn.Ct.App.1949); *accord, Holt v. American Progressive Life Ins. Co.*, 731 S.W.2d 923, 925 (Tenn.Ct.App.1987).