IN THE COURT OF APPEALS OF TENNESSEE

AT JACKSON

November 12, 2014 Session

## SUSAN ISBELL v. WILLIAM G. HATCHETT, ET AL.

**Direct Appeal from the Circuit Court for Fayette County**
**No. 24CC12013CV72     J. Weber McCraw, Judge**

_____

**No. W2014-00633-COA-R3-CV – Filed February 23, 2015**

_____

This appeal involves claims arising from a settlement agreement allegedly entered by two of the parties to settle previous lawsuits. Appellant filed a complaint against Appellees alleging four causes of action: (1) tortious interference with a contractual obligation; (2) abuse of judicial process; (3) breach of the implied covenant of good faith and fair dealing; and (4) conspiracy to deny Appellant her rights under the settlement agreement. Appellees responded by filing a joint motion to dismiss. The trial court found that three of Appellant's causes of action for tortious interference, breach of good faith, and conspiracy each required the existence of a contract and dismissed those claims based on a finding that the settlement agreement was void and unenforceable. The trial court also dismissed Appellant's abuse of judicial process claim after finding "no evidence whatsoever that [Appellees] or their counsel of record did anything improper that would support a cause of action for abuse of process." On appeal, we reverse the trial court's finding that the settlement agreement was void and therefore reverse the dismissal of Appellant's claims requiring a contract. Additionally, we hold that because the trial court did not consider any extraneous evidence in dismissing the abuse of judicial process claim, the trial court erred in applying a summary judgment standard with regard to that claim. Because we find that the complaint sufficiently alleged abuse of judicial process, we also reverse the trial court's dismissal of that claim.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in part, Affirmed in part, and Remanded

BRANDON O. GIBSON, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and ROGER A. PAGE, Sp. J., joined.

Philip B. Seaton, Memphis, Tennessee, for the appellant, Susan Isbell.

Betty Stafford Scott, Medina, Tennessee, and Linda L. Holmes, Memphis, Tennessee, for the appellees, William G. Hatchett and Julia D. Hatchett.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

#### *Prior Litigation Involving Mr. Hatchett and Ms. Isbell*

Plaintiff/Appellant Susan Isbell and Defendant/Appellee William G. Hatchett are former business associates as well as family members - Mr. Hatchett is married to Ms. Isbell's sister, Defendant/Appellee Julie Day Hatchett. For several years preceding 2009, Ms. Isbell worked as an independent contractor for Hatchett Hospitality, Inc., a Tennessee corporation solely owned by Mr. Hatchett. The termination of the business relationship between Ms. Isbell and Mr. Hatchett in 2009 gave rise to a dispute over commissions Ms. Isbell claimed to be owed. In September 2010, Ms. Isbell filed a lawsuit against Hatchett Hospitality in Shelby County Circuit Court seeking payment of the alleged commissions. In May 2012, Ms. Isbell filed a separate lawsuit in Shelby County Chancery Court against Mr. Hatchett individually as well as Hatchett Hospitality and several other entities in which she sought to pierce the corporate veil and hold Mr. Hatchett individually liable for the allegedly unpaid commissions.

#### *Settlement Agreement*

On August 1, 2012, Mr. Hatchett was deposed in connection with both of the pending lawsuits. A transcript of the deposition reflects that the parties reached an agreement to settle both pending lawsuits that day. Pursuant to the settlement, Mr. Hatchett, individually, agreed to pay $225,000 to Ms. Isbell in installments over the course of several years. The first installment in the amount of $30,000 was due on or before September 1, 2012, with the remaining balance of $195,000 to be paid in quarterly installments of $15,000 commencing on January 1, 2013. As collateral for his obligation, Mr. Hatchett agreed to grant Ms. Isbell a security interest in his ownership interest in a Knoxville hotel. Mr. Hatchett further agreed that in the event two other hotels in which he was a partial owner were liquidated or sold prior to completion of the installment payments, all proceeds he received would be utilized to satisfy his outstanding obligation to Ms. Isbell. In return, Ms. Isbell agreed to dismiss both lawsuits with prejudice within five business days of receipt of Mr. Hatchett's initial $30,000 payment. The parties' agreement was subsequently reduced to writing, which was not executed.

Despite the terms of the settlement agreement, Mr. Hatchett failed to make the initial $30,000 payment by September 1, 2012. Mr. Hatchett explained that he was not able to comply with the settlement agreement because he was involved in divorce proceedings and his compliance would violate an injunction against dissipation of marital assets issued by the Fayette County Chancery Court. Ms. Hatchett filed a complaint for

divorce against Mr. Hatchett in April 2006 in Fayette County that had not yet been resolved in September 2012. On April 21, 2006, pursuant to Tennessee Code Annotated section 36-4-106, [1] the court ordered a temporary injunction ("Section 36-4-106 injunction") to prevent Mr. Hatchett or Ms. Hatchett from "transferring, assigning, borrowing against, concealing or in any way dissipating or disposing, without the consent of the other party or an order of the Court, of any marital or separate property."

### *Hatchett Motion to Lift Injunction in Fayette County Chancery Court*

On September 17, 2012, Mr. Hatchett filed a motion in Fayette County Chancery Court asking the court to lift the Section 36-4-106 injunction so that he could comply with the settlement agreement. Mr. Hatchett's motion stated that after prolonged negotiations, he reached a settlement agreement with Ms. Isbell to resolve two lawsuits she filed against him and various entities under his control. The motion stated that Ms. Hatchett was not a party to either of Ms. Isbell's lawsuits and that Ms. Hatchett was "adamantly opposed to the use of her personal property as collateral as proposed by [Mr. Hatchett]." The motion did not include any information regarding the relative size of the Hatchetts' marital estate, nor did it state the amount of Mr. Hatchett's settlement with Ms. Isbell.

The Fayette County Chancery Court entered an order rejecting Mr. Hatchett's motion on October 3, 2012. In its order, the court noted that "the value of the marital property which [Mr. Hatchett] seeks to pledge pursuant to the proposed settlement or the extent of his marital interest in such property in any division of marital [property] has not yet been determined by this Court . . . ." The court found that allowing Mr. Hatchett to use marital funds to make settlement payments to Ms. Isbell would be unfair to Ms. Hatchett because Ms. Hatchett was not a party to either of the two lawsuits resolved by the settlement agreement.

---

[1] In pertinent part, Section 36-4-106 states:

> (d) Upon the filing of a petition for divorce or legal separation . . . the following temporary injunctions shall be in effect against both parties until the final decree of divorce or order of legal separation is entered, the petition is dismissed, the parties reach agreement, or until the court modifies or dissolves the injunction, written notice of which shall be served with the complaint:

> (1)(A) An injunction restraining and enjoining both parties from transferring, assigning, borrowing against, concealing or in any way dissipating or disposing, without the consent of the other party or an order of the court, of any marital property.

Tenn. Code Ann. § 36-4-106 (2014).

### *Isbell Motion to Enforce the Agreement in Shelby County Chancery Court*

On or around September 12, 2012, Ms. Isbell filed a motion to enforce the settlement agreement in her pending lawsuit against Mr. Hatchett in the Shelby County Chancery Court. Mr. Hatchett filed a response objecting to the motion. In opposing the motion, Mr. Hatchett stated that although he and Ms. Isbell were both aware of the pending divorce proceeding at the time they entered the settlement agreement, neither considered the effect that the Section 36-4-106 injunction would have. Mr. Hatchett stated that he had petitioned the Fayette County Chancery Court to lift the Section 36-4-106 injunction but that it issued an order declining to do so. Mr. Hatchett argued that the settlement agreement was unenforceable because his performance under the agreement would violate the Section 36-4-106 injunction. Ms. Isbell responded to Mr. Hatchett's objection and argued that the settlement agreement could be enforced without placing any encumbrance on marital property to which Ms. Hatchett would be entitled in a divorce. Ms. Isbell pointed out that when Mr. Hatchett petitioned the Fayette County Chancery Court to lift the injunction, he did not include any financial information about the total value of the marital estate. Ms. Isbell asserted that any share of Mr. Hatchett's marital property distribution would be "significantly greater" than the $225,000 he owed under the settlement agreement. Ms. Isbell further argued that a December 2010 Order of Reconciliation entered by the Fayette County Chancery Court was proof that Mr. Hatchett was using the ongoing divorce proceedings and injunction as a ploy to avoid his obligation under the settlement agreement.

After hearing oral arguments from the parties and considering their filings, the Shelby County Chancery Court issued an order ("Shelby County Order") siding with Mr. Hatchett. Though the court recognized the benefits of an early resolution of litigation, it stated that settlement agreements still had to comply with contract law. *See Waddle v. Elrod*, 367 S.W.3d 217, 222 (Tenn. 2012). The court stated that as a matter of public policy, Tennessee courts will not honor private contracts that tend to conflict with the constitution, laws, or judicial decisions of the state. *See Spiegel v. Thomas, Mann & Smith, P.C.*, 811 S.W.2d 528, 530 (Tenn. 1991). Based on the facts before it, the Shelby County Chancery Court found the settlement agreement unenforceable. The court found that when Mr. Hatchett entered the settlement agreement, he was a party to the pending divorce action in Fayette County Chancery Court and was still bound by its April 2006 injunction. The court found that because the terms of the settlement agreement required Mr. Hatchett to encumber marital property without Ms. Hatchett's consent or a court order, its enforcement would violate the injunction. Accordingly, on October 10, 2012, the Shelby County Chancery Court ruled the settlement agreement was not enforceable and denied Ms. Isbell's motion.

In May 2013, the Fayette County Chancery Court dismissed the divorce proceedings between Mr. and Ms. Hatchett.

4

*Isbell Initiates Separate Proceedings in Fayette County Circuit Court*

On September 10, 2013, Ms. Isbell initiated proceedings in this case by filing a complaint against Mr. and Ms. Hatchett in Fayette County Circuit Court. The complaint stated four causes of action: (1) tortious interference with a contractual obligation against Ms. Hatchett for refusing to consent to Mr. Hatchett's performance of the settlement agreement and for conspiring with Mr. Hatchett before the divorce court to enjoin the use of his personal assets; (2) abuse of judicial process against Mr. Hatchett for filing an incomplete and misleading motion with the intention of improperly using the judicial process to avoid his obligations under the settlement agreement; (3) violation of the implied covenant of good faith and fair dealing against Mr. Hatchett for failing to disclose financial information to the divorce court with the knowledge that doing so would have indicated his ability to comply with the settlement agreement without adversely affecting Ms. Hatchett's share of the marital estate; and (4) conspiracy to deny Ms. Isbell her rights under the settlement against both Mr. Hatchett and Ms. Hatchett for agreeing to use statutory injunctions during the pendency of their "faux divorce." The complaint stated the facts we have set forth herein regarding the parties' relationship, the two earlier lawsuits, and the settlement agreement. It further stated that Mr. Hatchett owned equity interests in various hotels throughout Tennessee with an approximate value of $1,000,000 and that the Hatchetts' marital home had a tax appraisal value of $1,644,200. Ms. Isbell alleged that Mr. Hatchett's omission of information regarding his net worth from his motion asking the divorce court to lift the Section 36-4-106 injunction was an intentional attempt to mislead the Fayette County Chancery Court so that it would deny his motion. She alleged that although Ms. Hatchett's divorce action was pending when Mr. Hatchett entered the settlement agreement, Ms. Hatchett had no intention of moving forward with it and had been living with Mr. Hatchett as his wife since an Order of Reconciliation was entered in their divorce case in December 2010.

On October 16, 2013, Mr. Hatchett filed an answer denying liability. On November 10, 2013, Mr. and Ms. Hatchett filed a Joint Motion to Dismiss. In their motion to dismiss, the Hatchetts cited the Shelby County Order to argue that Ms. Isbell could not prevail on her claims for tortious interference with a contract, violation of the implied covenant of good faith and fair dealing, and conspiracy to deny plaintiff her rights under the settlement because each of those claims required an enforceable contract. The Hatchetts also argued that Ms. Isbell's claim for abuse of judicial process should be dismissed because the litigation and settlement agreement between Mr. Hatchett and Ms. Isbell were unforeseeable in April 2006 when the Section 36-4-106 injunction took effect. Additionally, the Hatchetts argued that Ms. Isbell's complaint had no reasonable

chance of success and requested that the court make an award of attorneys' fees to them and impose Rule 11 sanctions[2] against Ms. Isbell and her attorney.

The Fayette County Circuit Court heard oral arguments on the matter on January 31, 2014. On March 10, 2014, the court issued an order granting the Hatchetts' joint motion to dismiss and denying their joint motion for Rule 11 sanctions. (Id.) The court made the following findings:

1. The Court finds that the Defendants' Joint Motion to Dismiss is well taken and shall be DISMISSED WITH PREJUDICE.

2. In dismissing Plaintiff, Susan Isbell's causes of action for Tortious Interference with Contractual Relationship, Civil Conspiracy to Defraud Plaintiff of her Rights under the Settlement Agreement, and Violation of the Implied Duty of Good Faith and Fair Dealing, the Court concurs with the ruling of Chancellor Arnold B. Goldin of Shelby County Chancery Court that the Settlement Agreement is void as against public policy and therefore unenforceable. Therefore, because this Court finds that the Settlement Agreement is void and the above mentioned causes of action require a validly enforceable contract, the Plaintiff's causes of action against both Defendants must fail and are DISMISSED WITH PREJUDICE.

3. As to Plaintiff's fourth cause of action for Abuse of Judicial Process, this Court finds no evidence whatsoever that either Defendant or their counsel of record did anything improper that would support a cause of action for abuse of process. Therefore, this Court finds that Plaintiff's cause of action for Abuse of Judicial Process is hereby DISMISSED WITH PREJUDICE.

4. As to the Defendants' request for the imposition of sanctions under Tenn. R. Civ. P. 11.02, this Court finds that the factual circumstances of this case may be a case of first impression in Tennessee, and therefore, the request for sanctions and an award of attorney's fees against Plaintiff and Plaintiff's counsel is DENIED.

Ms. Isbell filed a Notice of Appeal of March 31, 2014.

---

[2]Rules 11.02 and 11.03 of the Tennessee Rules of Civil Procedure provide that a court may impose appropriate sanctions against attorneys, law firms, or parties that present a pleading to court for an improper purpose or to increase the cost of litigation.

# I.    ISSUES PRESENTED

The primary issue presented by Ms. Isbell on appeal is whether the trial court erred in dismissing her complaint. Additionally, the Hatchetts contend that the trial court erred in denying their motion for Rule 11 sanctions.

# II.    STANDARD OF REVIEW

As a preliminary matter, we note that there is disagreement between the parties regarding the standard used by the trial court in adjudicating the claims. Ms. Isbell contends that the trial court dismissed her complaint pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The Hatchetts contend that the trial court disposed of the complaint on summary judgment pursuant to Rule 56. After reviewing the record, we find that each party is partially correct.

A Rule 12.02(6) motion to dismiss for failure to state a claim is the appropriate procedure for testing the legal sufficiency of the allegations contained in the complaint rather than the strength of the plaintiff's proof. *Webb v. Nashville Area Habitat of Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). Accordingly, a motion to dismiss should be determined by an examination of the pleadings alone. *Id.* If matters outside the pleadings are presented in conjunction with the motion to dismiss, and the trial court does not exclude those matters, the court must treat the motion as one for summary judgment and dispose of it as provided in Rule 56. Tenn. R. Civ. P. 12.02; *see also Patton v. Estate of Upchurch*, 242 S.W.3d 781, 786–87 (Tenn. Ct. Ann. 2007) ("Matters outside the pleadings may include affidavits, judgments and transcripts from a prior cause of action, and correspondence between the parties."). Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008). Regardless of which procedure the trial court used in dismissing each of Ms. Isbell's claims, its resolution of the matter presents a question of law, which we review de novo. *See Brick Church Transmission, Inc. v. S. Pilot Ins. Co.*, 140 S.W.3d 324, 328 (Tenn. Ct. App. 2003).

The Hatchetts attached a copy of the Shelby County Order to their joint motion to dismiss and argued that because the Shelby County Chancery Court ruled that the settlement agreement was unenforceable, each of Ms. Isbell's claims requiring the existence of a contract should fail. The trial court explicitly relied on the Shelby County Order to dismiss Ms. Isbell's claim against Ms. Hatchett for tortious interference with contract, her claim against Mr. Hatchett for breach of the implied covenant of good faith and fair dealing, and her claim against the Hatchetts for conspiracy to deny her of her rights under the settlement. Accordingly, with regard to those three claims, it is clear that

the trial court converted the Hatchetts' motion to dismiss to a motion for summary judgment under Rule 56, and we must review it under that standard.

Regarding Ms. Isbell's claim for abuse of judicial process, however, the Hatchetts only argued in their motion to dismiss that the allegations in the complaint failed to establish a cause of action. They did not cite any extraneous evidence in support of their contention that the abuse of judicial process claim should be dismissed, nor did the court purport to rely on any such evidence in dismissing it. Accordingly, under these somewhat unusual procedural circumstances, we must separately review the trial court's dismissal of Ms. Isbell's abuse of process claim as a dismissal for failure to state a claim under Rule 12.02(6).

## III.    ANALYSIS

### A.  Claims Requiring Existence of a Contract

As set forth in the previous section, the trial court relied on extraneous evidence of the Shelby County Order to dismiss three of Ms. Isbell's claims and, in so doing, converted the Hatchetts' motion to dismiss to a motion for summary judgment. As such, it was required to comply with the procedural requirements of Rule 56. *See* Tenn. R. Civ. P. 12.02 (requiring that such a motion be "treated as one for summary judgment and disposed of as provided in Rule 56"). As the nonmoving party, Ms. Isbell was entitled to the benefit of a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Tenn. R. Civ. P. 12.02. The hearing on the Hatchetts' motion to dismiss was timely held because more than thirty days elapsed between November 19, 2013, the date the Hatchetts filed the motion to dismiss, and the January 31, 2014 hearing thereon. Tenn. R. Civ. P. 56.04. While we note that the Hatchetts did not file a statement of undisputed facts pursuant to Rule 56.03, courts have held that such an error will be harmless where the record clearly shows that the nonmoving party cannot remedy a defect fatal to its action. *See Brick Church Transmission, Inc.* at 329; *Butler v. Diversified Energy, Inc.*, No. 03A01-9804-CV-00146, 1999 WL 76102, at *3 (Tenn. Ct. App. Jan. 28, 1999) (stating that because the requirements of Rule 56.03 are designed to benefit the court, they can be "waived"). Accordingly, we must determine whether the record shows that Ms. Isbell cannot remedy a defect fatal to her claims.

The trial court found that the absence of a validly enforceable contract presented a fatal defect to three of Ms. Isbell's claims: (1) her claim against Ms. Hatchett for tortious interference with contract; (2) her claim against Mr. Hatchett for breach of the implied covenant of good faith and fair dealing; and (3) her claim against the Hatchetts for conspiracy to deny plaintiff her rights under the settlement and granted summary judgment on those claims accordingly. As a preliminary matter, we note that Ms. Isbell's claims do not require that the settlement agreement be a presently valid and enforceable contract; rather, they only require that the settlement agreement effectuated a legal relationship between Mr. Hatchett and Ms. Isbell during the time period in which Ms.

8

Isbell's allegations arise. Because we conclude that the settlement agreement was not wholly void from the outset and that it did effectuate a legal relationship between Mr. Hatchett and Ms. Isbell, we reverse the trial court's grant of summary judgment in favor of the Hatchetts on these claims.

In its order, the only support the trial court provided for its finding that the settlement agreement was void was the earlier Shelby County Order. The trial court stated that "[this] Court concurs with the ruling of Chancellor Arnold B. Goldin of Shelby County Chancery Court that the Settlement Agreement is void as against public policy and therefore unenforceable." The trial court did not provide an explanation for its concurrence, nor did it cite any relevant undisputed facts that it considered in reaching its conclusion. In so doing, the trial court effectively gave res judicata effect to the Shelby County Order.[3]

The doctrine of res judicata bars a second suit on issues determined by a prior court. *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012). However, for res judicata to apply, the judgment in the prior case must have been final. *Sims v. Adesa Corp.*, 294 S.W.3d 581, 586 (Tenn. Ct. App. 2008).

The Shelby County Order was not a final judgment. The order denied Ms. Isbell's motion to enforce the parties' settlement agreement; it did not adjudicate all of the claims of the parties, nor was it certified as final with respect to fewer than all of the parties' claims pursuant to Rule 54.02. *See* Tenn. R. Civ. P. 54.02 ("[T]he Court . . . may direct the entry of a final judgment as to one or more but fewer than all of the claims . . . upon an express direction for the entry of judgment."). As such, the Shelby County Order was an interlocutory order subject to revision at any time prior to the entry of a final judgment in those proceedings. Interlocutory orders, while entitled to some weight in collateral proceedings, are not entitled to the binding effect of res judicata. *See Sims*, 294 S.W.3d at 586. The trial court erred by effectively giving res judicata effect to the Shelby County Order without further support for its findings.

Moreover, we note that the trial court mischaracterized the ruling in the Shelby County Order. Despite the trial court's statement to the contrary, the Shelby County Order does not state that the settlement agreement is void; rather, it states the settlement agreement is unenforceable.[4] Though the discrepancy may seem innocuous, its implications are actually significant in this case. A void contract is defined as one that has no legal effect, such that there is really no contract in existence at all. BLACK'S LAW DICTIONARY 350 (8th ed. 2004); *see also* 1 Williston on Contracts § 1:20 (4th ed. updated May 2014) ("Williston") ("[S]uch a promise is not a contract at all; it is the

---

[3]While the trial court was certainly not barred from concurring with the interlocutory order of another court, without further explanation or citation to relevant undisputed facts supporting its decision, the trial court's conclusory statement of concurrence effectively gives binding effect to the prior interlocutory order.

[4]The word "void" only appears one time in one sentence of the Shelby County Order: "Defendants contend that the settlement is void and against clear public policy."

'promise' or 'agreement' that is void of legal effect."). Accordingly, when a contract is void, the law treats it as if it never came into existence. An unenforceable contract, on the other hand, is defined as one that is valid but incapable of being enforced. BLACK'S LAW DICTIONARY 1563. Voidable contracts are one type of unenforceable contract. Restatement (Second) of Contracts § 8 cmt. a (1981). A voidable contract is one that is valid in its inception but in which one or more of the parties, by manifestation of an election to do so, may avoid the legal relations created by it. Restatement (Second) of Contracts § 7 (1981). Additionally, the party having the power to avoid the legal relations created by the contract may, by ratification or affirmance of the contract, extinguish the power of avoidance. *Id.* Because a voidable contract is capable of ratification, it affects the legal relations of the parties from the outset. 1 Williston § 1:20. Accordingly, even if the Shelby County Order was final, it would not be determinative of the matter in this case. If the settlement agreement between Mr. Hatchett and Ms. Isbell was voidable at its creation rather than void from the outset, it created a legal relationship between Mr. Hatchett and Ms. Isbell, and Ms. Isbell's claims are not subject to dismissal for the absence of a contract.

The Hatchetts contend that the trial court was correct in ruling that the settlement agreement was void from the outset. The Hatchetts argue that the settlement agreement never created a legal relationship between Mr. Hatchett and Ms. Isbell because it violated the Section 36-4-104 injunction. As such, they argue that they cannot be liable for any of Ms. Isbell's claims that are based on the existence of a contract between them. Ms. Isbell, on the other hand, argues that the settlement agreement was a voidable contract because Mr. Hatchett had the power to disaffirm or ratify. Accordingly, she contends that because the settlement agreement was a voidable contract, it affected the legal relations of the parties immediately, and she contends the trial court erred in dismissing her claims based on the non-existence of a contract. After reviewing the record and considering the relevant law, we agree with Ms. Isbell.

The settlement agreement between Mr. Hatchett and Ms. Isbell was a voidable contract. At the time the settlement agreement was entered, Mr. Hatchett was subject to the Section 36-4-106 injunction. It is important to note, however, that the Section 36-4-106 injunction is not absolute; it allows for transfer of marital assets under certain circumstances. Specifically, Mr. Hatchett was enjoined from "transferring, assigning, borrowing against, concealing or in any way dissipating or disposing, *without the consent of the other party or an order of the Court*, of any marital or separate property." Accordingly, Mr. Hatchett had the power to ratify the contract and make it enforceable by obtaining Ms. Hatchett's consent to his performance or a court order allowing him to perform. *See* Restatement (Second) of Contracts § 8 cmt. a ("[O]ne party to an unenforceable contract may have a power to make the contract enforceable by all the usual remedies . . . ."). Without such permission from Ms. Hatchett or the court, the contract was merely voidable on his part because compliance with its terms would have required him to violate the Section 36-4-106 injunction. *See* Restatement (Second) of Contracts § 7 cmt. a ("Typical instances of voidable contracts are those where . . . breach

10

of a warranty or other promise justifies the aggrieved party in putting an end to the contract."). Conversely, if Ms. Hatchett had granted Mr. Hatchett permission to comply with the agreement, justice certainly would have allowed Ms. Isbell to evade her obligations by arguing that the Section 36-4-106 injunction rendered the settlement agreement a legal nullity. Thus, it is clear that the settlement agreement effectuated a legal relationship between Mr. Hatchett and Ms. Isbell when it was entered. Furthermore, Mr. Hatchett's own action in petitioning the Fayette County Chancery Court to lift the Section 36-4-106 injunction, regardless of his intentions in doing so, is indicative of his belief that the settlement agreement created a legal relationship between him and Ms. Isbell. Although it is not clear the precise time at which Mr. Hatchett manifested an election to extinguish the settlement agreement, we conclude that, prior to his doing so, the parties were contractually bound by the legal relations the settlement agreement created. Accordingly, we conclude that the trial court erred in dismissing Ms. Isbell's claims requiring a contract based on a finding that the settlement agreement was void and unenforceable.

### B. Abuse of Judicial Process Claim

As set forth above, the trial court did not rely on any extraneous evidence to dismiss Ms. Isbell's claim for abuse of judicial process and, therefore, did not convert the Hatchetts' motion to dismiss to a motion for summary judgment with regard to that claim. We therefore review it separately under the standard associated with a Rule 12.02(6) failure to state a claim upon which relief can be granted. A motion to dismiss for failure to state a claim tests only the sufficiency of a single document filed at the very beginning of the case—the complaint. *Webb* at 438. "Our motion-to-dismiss jurisprudence reflects the principle that this stage of the proceedings is particularly ill-suited for an evaluation of the likelihood of success on the merits or of the weight of the facts pleaded, or as a docket-clearing mechanism." *Id.* at 437. Accordingly, courts reviewing such a motion must "construe the complaint liberally, presume that all factual allegations are true and give the plaintiff the benefit of all reasonable inferences." *Cullum v. McCool*, 432 S.W.3d 829, 832 (Tenn. 2013). A trial court should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *Id.*

To recover damages for abuse of judicial process, a plaintiff must establish two elements: "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 400 (Tenn. 2002). "The gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish." *Bell ex rel. Synder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 555 (Tenn. 1999) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 121, at 897 (5th ed.1984)). To show abuse

of process, a plaintiff must demonstrate that a legal proceeding, although properly initiated, has become perverted to accomplish some improper purpose that it was not intended by law to achieve. *Id.* "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself . . . ." *Id.* (quoting Keeton et al., *supra* § 121, at 898).

In her complaint, Ms. Isbell alleged that Mr. Hatchett purposefully induced the Fayette County Chancery Court to enter an order denying his request to lift the Section 36-4-106 injunction so that the Shelby County Chancery Court would deny Ms. Isbell's motion to enforce the settlement agreement. Specifically, she alleged that prior to ruling on enforcement of the settlement agreement, the Shelby County Chancellor suggested to Mr. Hatchett that he should file a motion in the Fayette County Chancery Court asking it to lift the Section 36-4-106 injunction. She alleged that although Mr. Hatchett did so, he intentionally omitted information the Fayette County Chancellor needed to lift the injunction. Ms. Isbell alleged that Mr. Hatchett owned interests in various hotels throughout Tennessee worth approximately $1,000,000 and that his home with Ms. Hatchett was valued at $1,644,200. Ms. Isbell alleged that despite his wealth, Mr. Hatchett's motion did not contain any information regarding his net worth. She alleged that the omission was intentionally designed to mislead the Fayette County Chancellor into denying his request, as the inclusion of such information would have shown that he was able to comply with the settlement agreement without impairing Ms. Hatchett's share of the couple's assets subject to equitable distribution. Additionally, Ms. Isbell alleged that the Hatchetts had been reconciled since December 2010 and that, by September 2012, Ms. Hatchett no longer had serious intentions of going through with the divorce. She alleged that Mr. Hatchett's statement that Ms. Hatchett was "adamantly" opposed to the settlement agreement and her refusal to consent to lifting the Section 36-4-106 injunction was further behavior calculated to mislead the trial court.

Presuming, as we must, that all of the factual allegations in Ms. Isbell's complaint are true, and allowing her the benefit of all reasonable inferences, we find that the trial court erred in dismissing Ms. Isbell's claim for abuse of judicial process. Given the allegations in the complaint, it could be reasonably inferred that although Ms. Hatchett filed for divorce in April 2006, the Hatchetts were no longer seriously considering a divorce at the time Mr. Hatchett filed the motion to lift the Section 36-4-106 injunction in September 2012. Additionally, it could be reasonably inferred that Mr. Hatchett purposefully withheld financial information to mislead the Fayette County Chancellor into entering an order denying his motion so that the Shelby County Chancellor would be unable to enforce the settlement agreement without violating the Fayette County order. If that were the case, Mr. Hatchett clearly would have misused his divorce proceedings to accomplish an ulterior purpose for which they were not designed and would be liable to Ms. Isbell for abuse of judicial process. Accordingly, in light of the foregoing, we must reverse the trial court's dismissal of Ms. Isbell's abuse of judicial process claim.

### C.  Rule 11 Sanctions

Finally, the Hatchetts contend that the trial court erred in denying their joint motion for sanctions pursuant to Rule 11.  Among other things, Rule 11 provides that a court may impose appropriate sanctions against attorneys and/or parties that present a pleading to court for an improper purpose or to increase the cost of litigation.  *See* Tenn. R. Civ. P. 11.02, 11.03.  On appeal, we review a trial court's decision to grant or deny a party's motion for sanctions pursuant to Rule 11 by the abuse of discretion standard. *Lindsey v. Lambert*, 333 S.W.3d 572, 578 (Tenn. Ct. App. 2010).  Given our resolution of the foregoing issues, we do not find that the trial court abused its discretion in denying the Hatchetts' motion.

## IV.   HOLDING

Because we conclude that the settlement agreement between Mr. Hatchett and Ms. Isbell affected legal relations between them at the time it was entered and was not void from the outset, we reverse the trial court's grant of summary judgment in favor of the Hatchetts on Ms. Isbell's claims for breach of the implied covenant of good faith and fair dealing, tortious interference with a contractual relationship, and conspiracy to deprive Ms. Isbell of her rights under the settlement.  Additionally, we conclude that Ms. Isbell's complaint stated sufficient facts to support a claim against Mr. Hatchett for abuse of judicial process and, therefore, reverse the trial court's dismissal of that claim.  Finally, we affirm the trial court's denial of the Hatchetts' motion for Rule 11 sanctions.  The matter is remanded to the trial court for further proceedings consistent with this opinion.  Costs of this appeal are taxed to Appellees William G. Hatchett and Julie Day Hatchett, for which execution may issue, if necessary.

_____

BRANDON O. GIBSON, JUDGE

13