IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 20, 2021 Session

## CITY OF MORRISTOWN ET AL. v. MICHAEL W. BALL ET AL.

**Appeal from the Chancery Court for Hamblen County**
**No. 2020-CV-119    Douglas T. Jenkins, Chancellor**

_____

**No. E2020-01567-COA-R3-CV**
_____

The trial court granted the cross-plaintiff's motion for judgment on the pleadings. Because this case is inappropriate for rendering judgment on the pleadings, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

J. STEVEN STAFFORD, P. J., W.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KRISTI M. DAVIS, J., joined

G. Kevin Hardin, Knoxville, Tennessee, for the appellants, Michael W. Ball, MPLG, LLC, and MPLG Trust.

Lauren Armstrong Carroll, Morristown, Tennessee, for the appellees, City of Morristown, Morristown Utility Commission.

W. Morris Kizer, Knoxville, Tennessee, for the appellee, Renasant Bank.

**OPINION**

### FACTUAL AND PROCEDURAL HISTORY

On February 23, 2009, the City of Morristown ("the City") entered into an Asset Purchase Agreement with MPLG, LLC ("the LLC"), regarding the sale of a waste water treatment facility by the LLC to the City. The City's successor-in-interest, the Morristown Utility Commission ("MUC"), later became involved when it took over sewer operations from the City.[1] Under the Asset Purchase Agreement, MUC was to pay monthly

_____

[1] The City and MUC are technically separate entities and the record in this case includes individual references to them. However, because the parties do not appear to assert that any significant difference exists between them (at least for purposes of this appeal), we will use "MUC" to refer to them collectively

installments referred to as "Flow Fees" to the LLC. In 2012, the LLC, some of its members, and the co-trustees of the MPLG Trust ("the Trust") entered a Global Settlement Agreement and a Trust Agreement. Those agreements provided, *inter alia*, that one-half of the Flow Fees would ultimately be transferred to a bank account designated by Michael W. Ball ("Ball"), one of the LLC members ("the Ball payments"). The remaining half of the Flow Fees were to ultimately be deposited into an account designated by another one of the LLC members. In 2016, the LLC was administratively dissolved, but there is very little information about that in the record or the parties' briefs.

In 2017, Renasant Bank ("the Bank") and Ball entered into a Security Agreement when the Bank loaned Ball $710,000.00, as evidenced by a Promissory Note.[2] The Security Agreement states, *inter alia*, that Ball "is or will be entitled to half of all future Flow Fees which are deposited with the MPLG Trust and, pursuant to Section 3.2.2 of the MPLG Trust, are immediately transferred to a separate bank account designated by [Ball] (the 'Right to Payments')," and that "[Ball] desires to pledge as additional collateral for the loan all of his right, title, and interest in the Right to Payments in order to provide to [the Bank] additional security for the Loan." In June 2018, Ball signed a letter to the co-trustees of the Trust ("the Ball Letter Agreement") stating, in part:

> I irrevocably direct that the full amount of all future payments that I am entitled to be paid under the MPLG Trust ("the Ball Payments") be paid to [the] Bank, and that the Ball Payments shall continue to be paid to [the] Bank until such time as you receive written notification from an officer of [the] Bank that the Ball Payments may be made to me.

The co-trustees and the Vice President of the Bank also signed the Ball Letter Agreement as "acknowledged and agreed to."

Ball failed to pay the Promissory Note, so the Bank scheduled a sale of the Ball payments on September 25, 2019, pursuant to the Security Agreement and Tennessee Code Annotated section 47-9-101, *et seq.* ("the Article 9 sale"). The Bank was the sole bidder, bidding $599,691.26, the full amount owed by Ball under the Promissory Note. MUC suspended flow fee payments beginning in the fall of 2019 as a result of a claim by MUC that it had overpaid the sums due under the Asset Purchase Agreement. The Trust had maintained an account at First Tennessee Bank that First Tennessee Bank closed when MUC suspended payment of the Flow Fees. The Bank's lawyer wrote a letter to counsel for MUC on February 12, 2020, advising that the First Tennessee account had been closed. MUC had apparently resumed paying the Flow Fees, so the Bank's lawyer also requested in that letter, *inter alia*, that the Ball payments be paid by a check jointly payable to the

---

throughout for ease of reference, even where they should be named individually.

[2] The Promissory Note references a "Loan Agreement," which appears to be a different document than the Security Agreement, but no such agreement is in the record.

Bank and the co-trustees, and that the co-trustees endorse the check for delivery to the Bank. On February 20, 2020, Ball wrote a letter to the co-trustees of the Trust and two of the original LLC members, in which he stated, "By the fact that MUC is now making direct payments to [the recipient of the other half of the Flow Fees] in a manner acceptable to him I elect to revoke the [T]rust in accordance with paragraph 9 of the Trust Agreement . . . ." The same day, Ball wrote a letter to MUC's counsel and assistant General Manager asserting, *inter alia*, that since the execution of the Asset Purchase Agreement, the LLC was consistently the recipient of all payments by MUC, and that MUC had no right to fulfill its contractual obligations to the LLC under the Asset Purchase Agreement by paying the Flow Fees to the Trust or the co-trustees. Therefore, he objected to the Bank's counsel's request in the February 12, 2020 letter for a check to be made payable to the Bank and the co-trustees. Instead, he requested that all future payments be made payable to the LLC and mailed to "Michael Ball c/o [the LLC]."

MUC filed a complaint for interpleader and injunctive relief in the Hamblen County Chancery Court ("the trial court") on March 6, 2020, against Ball, the LLC, and the Trust (collectively, "Appellants"),[3] and the Bank (together, with MUC, "Appellees"). The complaint sought permission to pay the Ball payments into the registry of the court until the court determined who was entitled to the Ball payments. It also sought to enjoin Appellants and the Bank from commencing action against MUC regarding the Ball payments. On March 9, 2020, the trial court entered an order allowing MUC to pay the Ball payments into the Registry of the Court pending further order of the court, and enjoining Appellants and the Bank from commencing other action against MUC related to the Ball payments.

In response to the interpleader complaint, the Bank filed an answer, counter-claim, and cross-claim on March 24, 2020. In its answer, the Bank asserted that it was entitled to the Ball payments as of July 25, 2017. The Bank attached eleven exhibits to its counter- and cross-claim: the Trust Agreement, the Asset Purchase Agreement, the Settlement Agreement, the Security Agreement, the Promissory Note, the Ball Letter Agreement, the February 12, 2020 letter from the Bank's lawyer to MUC's lawyer, the two resignation letters from the co-trustees, the February 20, 2020 letter from Ball to MUC's lawyer and CFO, and the letter from Ball revoking the Trust.[4]

---

[3] As is discussed throughout this Opinion, Ball agrees that the LLC was administratively dissolved. He also alleges that the Trust no longer exists because he revoked it. Nevertheless, every pleading in this case lists both the Trust and the LLC as parties represented by the same attorney as Ball and aligned with him. This issue is one among the many that illustrate the lack of clarity in this case.

[4] "Generally, [i]f matters outside the pleadings are presented in conjunction with . . . a Rule 12.03 motion [for judgment on the pleadings] and the trial court does not exclude those matters, the court must treat such motions as motions for summary judgment . . . ." *Bartley v. Nunley*, No. E2019-01694-COA-R3-CV, 2020 WL 5110302, at *7 (Tenn. Ct. App. Aug. 28, 2020) (citation and internal quotation marks omitted). Here, the trial court stated in its order that it considered the "entire record," which we take to mean that it considered the Bank's exhibits to the pleadings. Consequently, if those exhibits constitute

Many of the allegations in the Bank's cross- and counter-claim recite portions of the various agreements at issue in this case. Additionally, the Bank's cross- and counter-claim allege, *inter alia*, that: Ball has no ownership or voting rights in the LLC; Section 3 of the Settlement Agreement provides that the Flow Fees shall be paid by MUC to a separate account established by the Trust, with the Ball payments then being paid to an account designated by Ball; after Ball wrote the Ball Letter Agreement, the Ball payments were paid to the Bank through the Trust's First Tennessee Bank account; the Bank had never given written notification that the Ball Payments could be made to Ball; Ball breached the Security Agreement and Ball Letter Agreement and thus is estopped to assert that MUC should not pay the Ball payments to the Trust; and the Bank is entitled to declaratory judgment, pursuant to Tennessee Code Annotated section 29-14-102 and Rule 57 of the Tennessee Rules of Civil Procedure, declaring that the Ball payments should be paid by MUC to the Trust, for payment to the Bank, to the exclusion of Ball. The Bank went on to list five alternative requests for relief, "only in the event Ball's Position [that the Ball payments should be paid through the LLC to Ball, not to the Trust for distribution to the Bank] is proven to be correct." The remedy that each of these alternative claims sought was damages.

Appellants filed an answer to the Bank's cross-claim. Therein, they responded to many of the Bank's allegations that the agreements at issue say certain things by stating that the agreements speak for themselves. Additionally, Appellants averred, *inter alia*, that

---

matters outside of the pleadings, the Bank's motion should have been converted to one for summary judgment. Whether they do, however, is a close question.

Rule 10.03 of the Tennessee Rules of Civil Procedure states, in pertinent part,

> Whenever a claim or defense is founded upon a written instrument other than a policy of insurance, a copy of such instrument or the pertinent parts thereof shall be attached to the pleading as an exhibit . . . . Every exhibit so attached or referred to . . . shall be a part of the pleading for all purposes.

An "instrument" is "[a] written legal document that defines rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate." *Black's Law Dictionary* 869 (9th ed. 2009). Some of the exhibits attached to the Bank's counter- and cross-claim arguably do not fit within this definition because they are merely letters between the parties. Additionally, this Court has previously explained that "[m]atters outside the pleadings may include . . . *correspondence* between the parties." **Patton v. Est. of Upchurch**, 242 S.W.3d 781, 786–87 (Tenn. Ct. App. 2007) (emphasis added).

Nevertheless, other cases have noted that similar attachments can be treated as part of the pleadings. *See, e.g.*, **Indiana State Dist. Council of Laborers v. Brukardt**, No. M2007-02271-COA-R3-CV, 2009 WL 426237, at *8 (Tenn. Ct. App. Feb. 19, 2009) (quoting Wright and Miller, *Federal Practice and Procedure*, Civil § 1357, p. 376 (3d ed. 2004)) ("Numerous cases . . . have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment."). In any event, neither party has argued that the Bank's exhibits are matters outside the pleadings, so we will proceed to consider the Bank's motion as one for judgment on the pleadings.

the payments by MUC were first made to the LLC, which in turn transferred the funds to the Trust. Appellants denied, *inter alia*, that: Ball has no ownership interest or voting rights in the LLC; following Ball's execution of the Ball Letter Agreement, the Ball payments were paid to the Bank through the Trust's First Tennessee Bank account referenced in the Ball Letter Agreement; the Bank has never provided written notification allowing the Ball payments to be made to Ball; Ball is estopped to assert that MUC should not pay the Ball payments to the Trust for payment to the Bank; Ball breached the Security Agreement and the Ball Letter Agreement; the payments have ever been made in accordance with the terms of the Settlement Agreement; and the Bank is entitled to the requested declaratory judgment. Appellees admitted, *inter alia*, that the Bank became the owner of the Ball payments when it bid on them at the Article 9 sale.[5]

Subsequently, the Bank filed a motion for judgment on the pleadings on its counter-claim and cross-claim under Rule 12.03 of the Tennessee Rules of Civil Procedure. Therein, the Bank essentially restated the substance of its cross- and counter-claim. Appellants responded, arguing, *inter alia*, that several material disputes in the case necessitated a trial; that when read together, as they must be, the Asset Purchase Agreement and Settlement Agreement require all Flow Fees to be paid to the LLC, not the Trust—after which the fees could be transferred to accounts designated by the Trust; that "the Bank's security interest attaches only to any deposit arising out of the receipt of Flow Fees by [the LLC] to the account(s) designed by the Trust. There is no security interest in the payments from [MUC] to [the LLC]"; and because the Trust's First Tennessee Bank account was closed, any account in which the Bank may have had a security interest no longer existed.

The trial court granted the Bank's motion for judgment on the pleadings in a written order entered on October 23, 2020. The only explanation the trial court provided in its written order was that it had considered the motion, the parties' pleadings and responses, and the entire record, and "found that the facts set forth in the Motion demonstrate that the Motion [wa]s well taken, and that it should be granted." Thus, the trial court ordered that pursuant to Tennessee Code Annotated section 29-14-102 and Rule 57 of the Tennessee Rules of Civil Procedure, all payments by MUC should be paid directly to the Bank, to the exclusion of Appellants, and that the payments that had been made into the Registry of the Court should be paid to the Bank, also to the exclusion of Appellants. Appellants appealed.

## ISSUES PRESENTED

The dispositive issue on appeal is whether the trial court correctly granted the Bank's motion for judgment on the pleadings. There is also an issue regarding frivolous appeal damages, including attorney's fees.

---

[5] For a discussion of this particular fact and its impact on this appeal, see footnote 7 and our corresponding discussion of this issue, *infra*.

- 5 -

Here, the Bank filed its motion for judgment on the pleadings in its posture as cross- and counter-plaintiff. "[A] motion for judgment on the pleadings made by the plaintiff challenges the legal sufficiency of the defenses pled by the defendant" only, "and not the strength of the proof." ***Brewer v. Piggee***, No. W2006-01788-COA-R3-CV, 2007 WL 1946632, at \*6 (Tenn. Ct. App. July 3, 2007) (citations omitted). Such a motion "is filed pursuant to Tenn. R. Civ. P. 12.03 and is similar to a motion to dismiss for failure to state a claim [under Rule 12.02(6),] except that it is made after an answer is filed rather than before." ***Edwards v. Urosite Partners***, No. M2016-01161-COA-R3-CV, 2017 WL 1192109, at \*3 (Tenn. Ct. App. Mar. 30, 2017) (citations omitted).

"We review a trial court's decision on a Tennessee Rule of Civil Procedure 12.03 motion for judgment on the pleadings de novo with no presumption of correctness." ***Voya Ret. Ins. & Annuity Co. v. Johnson***, No. M2016-00435-COA-R3-CV, 2017 WL 4864817, at \*1 (Tenn. Ct. App. Oct. 27, 2017) (citing ***Young v. Barrow***, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)). "We assume all factual allegations of the non-moving party are true." ***Id.*** (citation omitted). We must also accept as true "all reasonable inferences drawn" from the non-moving party's well-pleaded facts and "treat as false all allegations of . . . the moving party[] which are denied." ***McClenahan v. Cooley***, 806 S.W.2d 767, 769 (Tenn. 1991) (citation omitted). "In our review, we . . . draw all reasonable inferences in th[e non-moving] party's favor." ***Tennessee Funding, LLC v. Worley***, No. M2018-01099-COA-R3-CV, 2019 WL 6331243, at \*3 (Tenn. Ct. App. Nov. 26, 2019) (citing ***McClenahan***, 806 S.W.2d at 769). "Conclusions of law are not admitted nor should judgment on the pleadings be granted unless the moving party is *clearly* entitled to judgment." ***Id.*** (citation omitted) (emphasis added).

Motions for judgment on the pleadings are rare vehicles for relief. *See* 3 Tenn. Prac. Rules of Civil Procedure Ann. § 12:11 (4th ed.) ("On the rare occasion when the pleadings raise no material issue of fact, any party may make a motion for judgment on the pleadings."); *cf. **Dobbs v. Guenther***, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992) (citations omitted) (explaining that Rule 12.02(6) motions to dismiss "are not favored, and are . . . rarely granted in light of the liberal pleading standards in the Tennessee Rules of Civil Procedure. . . . And so a complaint should not be dismissed, no matter how poorly drafted, if it states a cause of action"). This Court will affirm a trial court's decision to grant a motion for judgment on the pleadings "only if it determines that the [non-movant] is unable to prove any set of facts . . . that would entitle him or her to relief." *Cf. **Urosite Partners***, 2017 WL 1192109, at \*3. "While it is not our role to create claims where none exist, we must always look to the substance of a pleading rather than to its form." ***Guenther***, 846 S.W.2d at 273 (internal citation omitted) (citing ***Donaldson v. Donaldson***, 557 S.W.2d 60, 62 (Tenn. 1977); ***Usrey v. Lewis***, 553 S.W.2d 612, 614 (Tenn. Ct. App. 1977), *overruled on other grounds*, ***Jackson v. Smith***, 387 S.W.3d 486, 495 n.7 (Tenn. 2012)); *cf. **Leach v.***

***Taylor***, 124 S.W.3d 87, 92 (Tenn. 2004) ("Our previous decisions have set forth the standards to be used when examining a complaint to determine whether it will survive a motion to dismiss for failure to state a cause of action. A review of those decisions makes clear that a court should read the complaint with a generous eye.").

Thus, if the facts alleged in a pleading, or the reasonable inferences that may be drawn therefrom, could entitle the pleader to recovery under any legal theory, even if not the legal theory proposed in the pleading, judgment on the pleadings is inappropriate. *Cf.* ***Webb v. Nashville Area Habitat for Human., Inc.***, 346 S.W.3d 422, 427 (Tenn. 2011) (internal quotation marks and emphases omitted) (quoting ***Leach***, 124 S.W.3d at 92 (quoting ***Donaldson***, 557 S.W.2d at 61 (Tenn. 1977))) ("While a complaint in a tort action need not contain in minute detail the facts that give rise to the claim, it must contain direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested . . . by the pleader, or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial.").

**DISCUSSION**

**A.**

In order for the Bank to prevail in this case, the facts alleged by the Bank and admitted by Appellants, together with Appellants' own alleged facts, must show that the Bank is clearly entitled to direct payment of the Flow Fees from MUC. *See generally* ***Cherokee Country Club, Inc. v. City of Knoxville***, 152 S.W.3d 466, 470 (Tenn. 2004). As we perceive it, the crux of the parties' dispute appears to be whether the Ball payments were initially required to be paid, and were in fact initially paid, to the Trust or to the LLC—with the Bank advocating for the former and Appellants advocating for the latter. For example, in paragraph 9 of the Bank's cross- and counter-claim, it states:

> Section 3 of the Settlement Agreement provides that all Flow Fees shall be paid by [MUC] to a separate trust account established by the Trust for the benefit of [the other flow fee recipient] and Ball, with one-half of the Flow Fees transferred to a separate bank account designated by [the other flow fee recipient], and one half of the Flow Fees transferred to a separate bank account designated by Ball ("the Ball Payments").

In their answer, Appellants stated:

> In response to paragraph 9 of the Cross-Claim, these defendants assert that the Section 3 of the Settlement Agreement . . . speaks for itself, provided, however, these defendants affirmatively aver that the payments by [MUC] first were made to [the LLC] which, in turn, transferred the funds to the Trust.

- 7 -

Subsequently, in its motion for judgment on the pleadings, the Bank argued that because Appellants did not deny paragraph 9 of the Bank's counter- and cross-claim, the allegations in paragraph 9 were admitted by operation of Rule 8.04 of the Tennessee Rules of Civil Procedure. Respectfully, we disagree with this assertion.

Rule 8.04 states, in pertinent part: "Averments in a pleading to which a responsive pleading is required are admitted when not denied in the responsive pleading." Certainly, Appellants did not specifically use the term "denied" in responding to paragraph 9. But Appellants clearly and unequivocally stated that the allegation in paragraph 9 was incorrect to the extent that it asserted that Flow Fees were ever paid directly from MUC to the Trust. The Bank has cited no authority to suggest that this response was insufficient to constitute a denial under Rule 8.04. Moreover, Appellants elaborated on their denial in their response to the motion for judgment on the pleadings:

> The Settlement Agreement, which post-dates the [Asset Purchase Agreement], must be read in conjunction with one another. The Answer of Ball, [the LLC] and the Trust affirmatively avers that the payments by [MUC], first were made to [the LLC]. The [Asset Purchase Agreement] requires that all payments thereunder be made by [MUC] to [the LLC], not the Trust. [MUC] was not a party to the Settlement Agreement and its contractual obligations are governed by the [Asset Purchase Agreement]. In accordance with the [Asset Purchase Agreement], all prior payments of Flow Fees were, in fact, made by [MUC] to [the LLC]. Only after payment by the [MUC] to [the LLC] could there be a transfer to any account designated by the Trust, Ball or [the other flow fee recipient] under the Settlement Agreement.

We reiterate that we must construe Appellants' answer and response liberally and in the light most favorable to Appellants. S*ee McClenahan*, 806 S.W.2d at 769; *Guenther*, 846 S.W.2d at 273. The fair reading and clear import of Appellants' answer and response is that Appellants deny the Bank's characterization of the parties' agreements; i.e., Appellants contend that the Flow Fees were required to be paid first by MUC to the LLC, not the Trust, and were indeed always paid by MUC to the LLC and not the Trust—in contrast to the Bank's assertion that the Flow Fees should be paid first to the Trust by MUC. Thus, Appellants appear to have denied the keystone of the Bank's claim that the Bank is entitled to direct payments of the Flow Fees.

Appellants' denial has some basis in the parties' agreements. For example, the Trust Agreement states, in section 3.1:

> Consistent with the Settlement Agreement, the Co-Trustees shall establish a
> trust account with a bank chosen by the Co-Trustees (the "Trust Account")

in their sole discretion. The Trust Account shall receive all future installment payments or flow fees ("Flow Fees") paid by [MUC] *pursuant to an Asset Purchase Agreement* (the "Purchase Agreement") dated February 23, 2009 between [the LLC] and [MUC].

(Emphasis added). There is no dispute that the Asset Purchase Agreement clearly states that the Flow Fees will be paid by MUC to the LLC: "Buyer [MUC] will pay to Seller [the LLC] the following Flow Fees per payment period . . . ." Thus, one interpretation of the Trust Agreement is consistent with Appellants' contention that the Flow Fees are to be paid to the Trust after being paid to the LLC by MUC. And this Trust Agreement was expressly incorporated into the Security Agreement that Ball entered into with the Bank.[6] *See Wofford v. M.J. Edwards & Sons Funeral Home Inc*, 490 S.W.3d 800, 811 (Tenn. Ct. App. 2015) (citing 11 *Williston on Contracts* § 30:25 (4th ed.) ("Generally, all writings which are part of the same transaction are interpreted together.")) ("[W]ritings referred to in a written contract are incorporated by reference into the contract and generally will be considered as part of the agreement of the parties.").

It is true that the Settlement Agreement does not also contain exactly the same language expressly stating that fees were to be paid to the Trust "pursuant to [the] Asset Purchase Agreement." However, the Settlement Agreement does specifically state that the Flow Fees were "subject to the terms and conditions of the [Asset] Purchase Agreement[,]" i.e., the agreement that clearly provides that the Flow Fees are to be paid to the LLC. Additionally, the Bank makes much of the fact that the Security Agreement states that "[t]he MPLG Trust . . . is the *sole initial recipient* and acts as the conduit of all future . . . Flow Fees . . . paid by [MUC] pursuant to [the Asset Purchase Agreement]." (Emphasis added). Yet, the Bank fails to reconcile the "sole initial recipient" language with the statement immediately following it—that the fees are paid pursuant to the Asset Purchase Agreement, (i.e., to the LLC). Thus, a question exists as to which provisions are controlling in this case. And Appellants' contention that the Flow Fees were not to be paid by MUC to the Trust directly appears to have some support.

We recognize that the proper interpretation of the parties' contracts may ultimately be a question of law. *See Dick Broad. Co. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013) (citations omitted) ("We review issues of contractual interpretation de novo . . . . The meaning of the contract becomes a question of fact only if an ambiguity remains after we have applied the appropriate rules of construction."). Many of the other issues that Appellants state are unresolved here also likely involve questions of law. For example, the parties disagree over whether the revocation of the Trust was effective, whether Ball has any voting or ownership rights in the LLC, and even what the Bank's security interest is actually in.

---

[6] Specifically, the Security Agreement states that "any and all rights and interests arising out of this Agreement are subject to the terms of (1) the [] Settlement Agreement [] and (2) the [] Trust Agreement."

Appellants have alleged some facts, however, that they assert prevent the Bank from obtaining judgment on the pleadings. For example, Appellants assert that, contrary to the Bank's assertion that the payments were required to be made to the Trust directly, the payments were actually always historically made to the LLC first. We accept this allegation as true. *See, e.g.*, **McClenahan**, 806 S.W.2d at 769. Appellants also denied the Bank's assertion that following his execution of the Ball Letter Agreement, the Ball payments were paid to the Bank through the Trust account. Indeed, in responding to the motion for judgment on the pleadings, Appellants asserted that Ball attempted to have the Flow Fees routed directly to the Bank, but the Bank refused. While the Bank rebuts this assertion in its appellate brief on the basis that Appellants submitted no evidence to support it, we take Appellants' allegations as true in considering a motion for judgment on the pleadings. It was the Bank's choice to file a motion in which evidence was not required; we will not relieve the Bank from the consequences of its own strategic choices by requiring a party to present evidence where none is required.

These factual disputes have the potential to affect the legal questions involved in this case. Indeed, the Tennessee Supreme Court has held that even where a contract contains an integration clause, "general extrinsic evidence of context may be used to interpret the contractual language in line with the parties' intent[.]" ***Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.***, 566 S.W.3d 671, 697 (Tenn. 2019) ("The parol evidence rule does not . . . prohibit courts from considering extrinsic evidence of the facts and circumstances surrounding the contract's execution as an aid in the construction of the contract's language, but the evidence may only give the words of a contract a meaning consistent with that to which they are reasonably susceptible, i.e., to interpret contractual terms." (quoting ***URI, Inc. v. Kleberg Cnty.***, 543 S.W.3d 755, 765 (Tex. 2018)); *see also* Tenn. Code Ann. § 47-1-303 (concerning course of performance in cases governed by the Uniform Commercial Code); ***Lively v. Drake***, 629 S.W.2d 900, 904 (Tenn. 1982) ("We are of the opinion that the course of dealing between the parties over a period of almost two years was such that appellants had been led to believe that irregular payments [on a promissory note] would be accepted without acceleration."); ***Bull Mkt., Inc. v. Elrafei***, No. W2016-01767-COA-R3-CV, 2017 WL 464923, at *3 (Tenn. Ct. App. Feb. 3, 2017) (internal citations and some quotation marks omitted) ("After a contract is made, it may be modified by express agreement or by conduct that evidences the contracting parties' consent. . . . A party's agreement to modify a contract need not be express, but it may be implied from a course of conduct. The parties' course of conduct in carrying out the contract is the best evidence of their original intent."); ***Dog House Invs., LLC v. Teal Properties, Inc.***, 448 S.W.3d 905, 915 (Tenn. Ct. App. 2014) ("We agree with the trial court that the parties' course of conduct indicated that they intended 'other cause' in paragraph 19 of their Agreement to include flood damage."). And of course, where a contract is found to be ambiguous, parol evidence is generally permitted. *See* ***Bratton v. Bratton***, 136 S.W.3d 595, 601–02 (Tenn. 2004) (citing ***Barker v. Freeland***, 91 Tenn. 112, 18 S.W. 60, 61 (1892) ("[W]here the writing is not plain and unambiguous and is such as to require the aid of parole evidence and the parole evidence is conflicting or may lead to

more than one conclusion, the doubtful parts may be submitted to the fact-finder for resolution.")).

Therefore, the factual disputes Appellants have raised, regarding whether the Ball payments were always initially paid to the LLC and not to the Trust, and whether the Bank ever actually received and accepted the Ball payments, at the very least indicate that the Bank is not *clearly* entitled to judgment at this juncture. *See* **Worley**, 2019 WL 6331243, at \*3. In other words, if we take as true these factual allegations by Appellants, we are, at a minimum, left with too many questions to conclude that the Bank is clearly entitled to judgment. These questions include how the parties' contracts should be interpreted. And because Appellants' denial of the Bank's allegations posits an interpretation that is not completely unfounded, as explained above, and Appellants have injected issues of fact that might influence the proper interpretation, we certainly cannot conclude at this stage that judgment on the pleadings is warranted.

What is more, the parties have not sufficiently explained their disputes. For example, while the parties agree that the LLC was administratively dissolved in 2016, neither has explained what the effects of that dissolution are in this case. Furthermore, the Bank attempts to argue on appeal that it is entitled to prevail because it became the owner of the Ball payments at the Article 9 sale, and Appellants have "asserted no claim or right that would permit [Ball] to receive the Ball Payments, in derogation to the Bank's ownership thereof." It is true that the Bank alleged that it had purchased the Ball Payments in an Article 9 Sale in its complaint; Appellants admitted this fact. The Bank did not, however, assert in its motion for judgment on the pleadings or the hearing thereon that this fact provided any basis for judgment in its favor. Instead, this argument was developed for the first time on appeal. The Tennessee Supreme Court has indicated that waiver may occur where arguments in the trial court are similarly "minimally addressed[.]" **In re Adoption of E.N.R.**, 42 S.W.3d 26, 32 (Tenn. 2001) ("To now rely upon the importance of this issue as grounds for appellate review is near hypocrisy given the short shrift it received at trial where it could have, and should have, been fully adjudicated.") This argument is therefore waived.[7] *See* **Barnes v. Barnes**, 193 S.W.3d 495, 501 (Tenn. 2006) (citing **Simpson v. Frontier Cmty. Credit Union**, 810 S.W.2d 147, 153 (Tenn. 1991)) ("Issues not raised in the trial court cannot be raised for the first time on appeal.").

If findings were contained in the final order, we would be in a better position to review the relevant disputes at hand.[8] However, they were not, and as a result, we are left

---

[7] We therefore do not weigh on the merits of this argument.

[8] Even though Rule 52.01 of the Tennessee Rules of Civil Procedure exempts a trial court from having to state its findings of fact and conclusions of law on decisions of Rule 12 motions, "it is most often a good idea for the court to include its findings in its order regardless of whether the lack thereof constitutes error." **PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship**, 402 S.W.3d at 660. Moreover, while we did not elect to do so in this case, "an appellate court is permitted [under Tennessee Code Annotated section 27-3-128] to remand [a] case for proper findings when the trial court has failed to make

without guidance in attempting to resolve a complicated, haphazard case. Where so many factual and legal disputes exist, it is difficult to conclude that the rare relief offered by a motion for judgment on the pleadings is appropriate. *See* 3 Tenn. Prac. Rules of Civil Procedure Ann. § 12:11.

To the extent that the Bank raises a distinct, alternative claim that it is entitled to declaratory judgment because Ball breached the Security Agreement and/or the Ball Letter Agreement, we also conclude that judgment on the pleadings is inappropriate. In a recent similar case, ***Local TV Tennessee LLC v. N.Y.S.E. Wolfchase LLC***, No. W2017-00675-COA-R3-CV, 2018 WL 1721866 (Tenn. Ct. App. Apr. 9, 2018), we came to the same conclusion. Specifically, we reversed a trial court's grant of the plaintiff's motion for judgment on the pleadings because factual disputes existed in the pleadings, as evidenced by the defendant's denial of the plaintiff's allegation of breach of contract. There, we stated that "Tenn. R. Civ. P. 12.03 requires us to look only at the pleadings to determine whether [the defendant LLC's] Answer constitutes a denial that [the plaintiff LLC] was entitled to damages in the amount of approximately $511,000 as a result of an alleged breach of the [contract]." ***N.Y.S.E. Wolfchase LLC***, 2018 WL 1721866, at *4. Although the defendant had admitted that it had entered into the contract with the plaintiff, it "denied throughout its Answer that it breached the [contract] or that it owed approximately $511,000 in unpaid advertising fees." ***Id.*** Thus, we concluded that "[b]ecause [the defendant] denie[d] that it owed approximately $511,000 for a breach of contract claim throughout its Answer, the pleadings contain[ed] factual disputes. Therefore, [the plaintiff's] Motion for Judgment on the Pleadings should have been denied." ***Id.*** Here, Appellants have also denied that Ball breached the Security Agreement or the Ball Letter Agreement. As a result, we are compelled to reach the same conclusion as the ***Local TV*** Opinion. *See also **Alderwoods (Tennessee), Inc. v. The Alexander Grantor Retained Annuity Trusts***, No. M2005-02025-COA-R3-CV, 2006 WL 2135421, at *3 (Tenn. Ct. App. July 31, 2006) ("The only relevant fact to be considered in this Tenn. R. Civ. P. 12.03 dispute is whether Defendant's Answer constituted a denial that Plaintiff fully complied with the option provisions in the lease agreement. Since Defendant has put at issue whether Plaintiff's appraisal was prepared in accordance with the applicable standards, as required by the statute, [which Defendant argued bore upon the parties' contract,] we must assume for purposes of this Tenn. R. Civ. P. 12. 03 motion that it was not. Moreover, Defendant is entitled to subject Plaintiff and its appraiser to discovery for that purpose.").

In sum, where Appellants have in effect denied virtually all of the Bank's material allegations, resolution on the pleadings is inappropriate. *See also **Davis v. Barr***, 646 S.W.2d 914, 918 (Tenn. 1983) ("[W]e have in the pleadings before us disputed factual issues. The Chancellor was in error in disposing of this case on motion for judgment on the

---

adequate findings necessary for the appellate court to make a just determination of the issues on appeal." ***John Allen Const., LLC v. Hancock***, No. W2004-02920-COA-R3-CV, 2006 WL 473732, at *6 (Tenn. Ct. App. Mar. 1, 2006) (citations omitted).

pleadings."); *cf. also **White v. Tennessee-Am. Water Co.***, 603 S.W.2d 140, 142 (Tenn. 1980) (explaining, inter alia, that where the plaintiff alleged breach of contract and the defendant claimed that it did not cause the subject loss, "[a]bundant issues for trial were made by these pleadings, and summary dismissal of the case was improper."); ***Rast v. Terry***, 532 S.W.2d 552, 553 n.1 (Tenn. 1976) ("This was not a proper case for submission on the pleadings, without an accompanying stipulation of fact, since sharp factual issues were involved."). Therefore, the Bank's motion for judgment on the pleadings should have been denied.

We note again that the Bank made many additional alternative claims for relief in its cross-claim and motion for judgment on the pleadings, all of which sought damages. It does not appear that the trial court addressed these claims, as the trial court's order does not address damages. Therefore, we decline to address these claims in this appeal. They are therefore pretermitted. *See **Dent Rd. Gen. P'ship v. Synovus Bank***, No. W2017-01550-COA-R3-CV, 2018 WL 6173406, at *15 (Tenn. Ct. App. Nov. 26, 2018) (citation omitted) ("[W]e have more recently declined to rule on issues that were not expressly addressed by the trial court.").

B.

The Bank additionally seeks frivolous appeal damages, including attorney's fees, under Tennessee Code Annotated section 27-1-122:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

A frivolous appeal is one that is devoid of merit or has no reasonable chance of success. ***Robinson v. Currey***, 153 S.W.3d 32, 42 (Tenn. Ct. App. 2004).

Here, the Bank did not designate its request for frivolous appeal damages as an issue in its appellate brief. Instead, the issue is raised only in the body of its brief. MUC's brief, which merely joins in the Bank's brief, therefore suffers from the same infirmity.[9] Generally, we "consider an issue waived where it is argued in the brief but not designated as an issue." ***Childress v. Union Realty Co.***, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) (citations omitted). This rule has been applied countless times to requests for frivolous appeal damages. *See, e.g.*, ***Sekik v. Abdelnabi***, No. E2019-01302-COA-R3-CV, 2021 WL 120940, at *34 (Tenn. Ct. App. Jan. 13, 2021), *perm. app. denied* (Tenn. Aug. 9, 2021)

---

[9] Because no other statutory or contractual provision is cited in MUC's brief, we assume that MUC also seeks attorney's fees under the frivolous appeal statute.

- 13 -

("Because Wife did not raise the issue of this being a frivolous appeal or the fact that she sought her attorney's fees on appeal in her statement of the issues, we decline to award attorney's fees in this appeal."). Perhaps in an effort to remedy this mistake, the Bank filed a motion following the filing of its brief, seeking frivolous appeal damages. We reserved ruling on that motion.

We need not decide whether this issue is waived, however, because Appellants prevail in this appeal. Therefore, the Bank's motion for frivolous appeal damages is hereby denied, and Appellees' requests for damages and attorney's fees in their briefs are pretermitted as moot.

## CONCLUSION

The judgment of the Hamblen County Chancery Court is reversed. This cause is remanded for further proceedings as are necessary and consistent with this Opinion. Costs of this appeal are assessed to Appellees Renasant Bank, the City of Morristown, Tennessee, and Morristown Utility Commission, for which execution may issue if necessary.

S/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE